UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CV-01086-NCC |
| | ) |
| BANK OF SPRINGFIELD, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

This is a dispute between two lenders to the now defunct Gateway Buick GMC, Inc., d/b/a Gateway Buick GMC ("Gateway"), which operated a General Motors ("GM") automobile dealership in Hazelwood, Missouri. Plaintiff was Gateway's "floor plan" lender and provided financing for Gateway's automobile purchases secured by a security interest in all of Gateway's assets.

On October 2, 2015, Plaintiff executed a Subordination Agreement ("Subordination Agreement") to induce Defendant Bank of Springfield ("BOS") to extend credit to Gateway. Compl. Ex. H, Doc. # 5-8. Under the Subordination Agreement, Plaintiff agreed to subordinate its security interest in Gateway's open accounts receivable with GM, "except to the extent, if any, that such GM Open Accounts Receivable constitute proceeds of specific vehicles floor planned for [Gateway] and for which [Plaintiff] remains unpaid in whole or in part." Compl. Ex. H, Doc. # 5-8, ¶ 1. After the execution of the Subordination Agreement, BOS extended financing to Gateway through a series of three loans, a loan secured by a mortgage on Gateway's real estate and two revolving lines of credit secured by Gateway's GM accounts receivable. Compl. ¶ 7, Ex. A, B, and C (Doc. #5-1, #5-2, and #5-3).

Plaintiff did not request, nor did BOS agree to any limitation upon, or to Plaintiff's control over, BOS's use of Gateway's receivables in the ordinary course of business.[1] Thus, over the next few years, GM deposited proceeds on its Open Account with Gateway into the deposit account and BOS periodically repaid its loans from funds in the deposit account, without regard to whether the funds related to vehicles floor-planned by Plaintiff or other financial matters—incentives and such—processed through the Open Account. Compl. ¶ 18, 19. Plaintiff does *not* allege that BOS paid itself outside the ordinary course of business, or that BOS colluded with Gateway to subvert Plaintiff's security interest in any Gateway collateral.

## ARGUMENT

The absence of those allegations is important because, under Missouri law:

> At most, the subordination agreement in this case ensured that UPB was a junior secured creditor and firmly established that UPB knew of GECC's security interest in some of Machinery's inventory and its proceeds. But even a junior secured creditor that knows of its junior status can be paid in the ordinary course of business. GECC had to show more.

*GE Capital Corp. v. Union Planters Bank, NA*, 409 F.3d 1049, 1058 (8th Cir. 2005).

Plaintiff alleges that BOS's application of Gateway's deposit account funds breached the Subordination Agreement or was wrongful under seven different common law theories. All of Plaintiff's claims depend upon the incorrect premise that BOS could not pay itself in the ordinary course of business and otherwise fail to state a claim as a matter of law. The Court should dismiss the First Amended Complaint in its entirety.

**I.   STANDARD OF REVIEW**

---

[1] Such "control agreements" are fairly common commercial practice among competing secured lenders.

The Court must construe the Complaint in the light most favorable to Plaintiff and accept the well-pleaded factual allegations as true. *Chartis Specialty Ins. Co. v. Vaughan Foods, Inc.*, 2017 U.S. Dist. LEXIS 13712 at *3 (E.D. Mo. 2017). "However, [w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Id.* at *4, citing *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

## I. THE COURT SHOULD DISMISS COUNT I FOR BREACH OF THE SUBORDINATION AGREEMENT BECAUSE NEITHER THE SUBORDINATION AGREEMENT NOR THE UCC PROHIBITS PAYMENTS TO A JUNIOR CREDITOR IN THE ORDINARY COURSE OF BUSINESS

The Subordination Agreement established the competing priorities of Plaintiff's and BOS's security interests, nothing more. The Subordination Agreement did not restrict BOS's use of Gateway's deposit account based upon the origin of the funds or any other criteria.

In *GE Capital Corp., supra,* the Eighth Circuit addressed the exact issue presented by Count I and ruled against the senior lender. There, GE Capital and Union Planters Bank provided financing to a man-lift manufacturer as follows:

> Machinery financed the purchase of its manlift inventory with GECC, UPB, and various other lenders, and it gave those creditors security interests in the inventory they financed. UPB was also Machinery's lender on an operating note, secured by a blanket lien on all of Machinery's property, and it was Machinery's depository bank. In March 2000, GECC and UPB entered into a subordination agreement in which UPB subordinated its security interest in GECC-financed inventory to the interest of GECC, as well as its interest in "all cash, rents and non-cash proceeds" arising from that same property.

*Id.*, at 1052.

UPB regularly swept funds from the manufacturer's operating accounts to pay down its line of credit. When the manufacturer declared bankruptcy, GECC sued UPB, alleging UPB's

account sweeps breached the subordination agreement and violated various other common law duties.

Applying Missouri law, the Eighth Circuit disagreed, beginning its analysis with the Missouri UCC:

> Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

*GE Capital Corp.*, 409 F.3d at 1055, citing RSMo § 400.9-306, cmt. 2(c).[2] The Eighth Circuit concluded that the UCC did not restrict a junior lender's use of funds unless the payments were made "out of ordinary course or otherwise in collusion with the debtor." *Id.,* at 1056. Similarly, the Eighth Circuit ruled that the parties' subordination agreement only "limited [the junior lender's] ability to look to its security to satisfy Machinery's indebtedness by subordinating its 'security interest' to GECC's, it did not promise to forego Machinery's payment of the substantial debt that Machinery owed." *Id.,* at 1057-58. *See also, GE Capital Corp. v. Union Planters Bank, NA (In re Machinery),* 342 B.R. 790, 798 (E.D. Mo. Bkrtcy. 2006); *First Dakota Nat'l Bank v. First Nat'l Bank of Plainview,* 2011 U.S. Dist. LEXIS 106102 at *27-29 (D. S.D. 2011).

---

[2] The controversy in *GE Corp.* arose in 2000 and thus was decided under the UCC prior to 2001 amendments. However, the reasoning of *GE Capital* and the result compelled by it is the same under either version of the UCC. The legislature moved the substance of prior § 400.9-306 to § 400.9-332 and ramped up its protection of transferees of funds from deposit accounts. Section 400.9-332 now provides that a transferee of funds from a deposit account will take subject to a security interest *only* if the transferee acted *in collusion* with the debtor in violating the rights of the secured party. Furthermore, the 2001 UCC revisions also supplemented depository bank protections by adding completely new §§ 9-340 and 9-341, discussed *infra,* which clearly permit the actions taken by BOS in this case.

Collusion requires evidence of more than knowledge; it requires that the defendant and the debtor acted in concert, that their purpose was illegal, fraudulent or wrongful, and that the defendant's action by itself was wrongful to the plaintiff. *In re Machinery*, 342 B.R. at 799. Plaintiff alleges nothing of the kind here. Under the revolving loan agreements between Gateway and BOS, Gateway authorized BOS to charge all sums owing on the advances against Gateway's deposit accounts. Compl. Ex. B, Doc. # 5-2, p. 2 (Right of Setoff); Compl. Ex. C, Doc. # 5-3, p. 2 (same). Plaintiff has not alleged that BOS did anything more than follow its agreements with Gateway in a routine way and in the ordinary course of business.

Furthermore, even without the protection provided by the UCC, the Eighth Circuit *still* would not hold BOS liable under the facts as pleaded. Under the Subordination Agreement, all GM payments were presumed to be BOS's "Collateral." Nothing in the agreement obligated BOS to figure out whether Plaintiff had been paid for specific, or even any, floor-planned automobiles, and this Court should not imply a duty to do so:

> GECC takes this to mean that the district court held that the subordination agreement imposed upon UPB an implicit contractual duty to find and segregate any funds that were deposited in which GECC may claim a security interest, and that in the face of that duty, UPB could not claim a lack of knowledge. If that is what the district court meant, it erred. First, as explained below, UPB did not give up all of its rights. Second, we will not imply a duty to segregate a debtor's deposits. Sophisticated lenders like GECC and UPB are fully able to bargain for such duties, and they know the risks associated with allowing debtors to commingle funds in a single account that is used to pay various creditors in the ordinary course of the debtor's business.

*GE Capital*, 409 F.3d at 1057.

Finally, although not dealt with in *GE Capital*, Missouri UCC §§9-340 and 9-341 protect BOS. Section 9-340 provides that a bank's right of set-off against a deposit account takes

priority over a secured party's interest unless the secured party perfects its security interest in the deposit by control under § 9-104(a)(3). Section 9-341 provides that, unless it has otherwise agreed in an authenticated writing, a depository bank's rights to a deposit account are not terminated, suspended or modified by (1) the creation, attachment, or perfection of a security interest in the account; (2) the bank's knowledge of the security interest; or (3) the bank's receipt of instructions from the secured party. *Mo. Stat. Ann.* § 400.9-341. "The bank may continue to follow its customer's instructions by, for example, honoring checks or allowing withdrawals and otherwise treating the account as belonging solely to the customer." *First Dakota Nat'l Bank* at *24 (citing South Dakota's UCC § 9-341 [identical to Missouri UCC 9-341], Official Comment 3). "The bank's rights and duties are not changed whether or not the security interest has attached or is perfected. The only exception is if the deposit account security interest has been perfected by *control*." *Id.* (citation omitted; emphasis added).

The Subordination Agreement contains no language restricting BOS from exercising its rights under § 9-341 and Plaintiff does not allege that it took control of Gateway's deposit account. As a matter of law, BOS did not breach the Subordination Contract by applying deposits in Gateway's deposit account to repay advances under Gateway's line of credit.

The Court should dismiss Count I.

II. **THE COURT SHOULD DISMISS COUNTS II-VIII BECAUSE THEY ARE PRE-EMPTED BY THE MISSOURI UCC AND OTHERWISE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

    A. **Missouri's UCC and the economic loss doctrine require dismissal of Counts II-VIII**

Counts II through VIII allege common law tort claims or request equitable remedies against BOS for its use funds in Gateway's deposit account: (II) conversion, (III) unjust enrichment, (IV) fraudulent inducement, (V) negligent misrepresentation, (VI) equitable claim

for rescission, (VII) constructive trust, and (VIII) money had and received. Missouri's UCC Article 9 governs priority disputes among creditors and preempts all of Plaintiff's common law claims.

The UCC displaces and pre-empts all common law claims that create rights, duties, or liabilities inconsistent with the UCC. *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 2011 U.S. Dist. LEXIS 70566 at *8-9 (W.D. Mo.)(collecting numerous decisions from other state and district courts). "If a claim is subject to the UCC, its applicable provisions cannot be avoided" and the "common law contrary to that provision cannot apply." *Cub Cadet Corp. v. Mopec, Inc.*, 78 S.W.3d 205, 209 (Mo. Ct. App. 2002)(applying UCC Art. 9). *See also, Community Bank v. Stevens Fin. Corp.*, 966 F. Supp. 775, 780 and 77 (N.D. Ind. 1997); *First Dakota Nat'l Bank* at *18-19.

In this case, Plaintiff's claims in Counts II through VIII arise out of the same facts as Count I and seek remedies inconsistent with the application of Missouri UCC Article 9. *See* UCC §§ 9-322 (deposit account transfers are free and clear of security interests unless collusion to harm secured creditor exists), 9-340 (bank's set-off and recoupment rights are not diminished by senior security interests), and 9-341 (bank may continue to treat debtor as customer of deposit account unless creditor has taken control of account). Sections 9-322, 9-340, and 9-341 "cannot be avoided" by common law claims that would impose duties or liabilities inconsistent and contrary to the UCC provisions. Allowing common law tort claims to proceed under circumstances governed by the UCC would defeat the legislative intent to prescribe the applicable duties and liabilities governing depository banks and secured creditors. *Impulse Trading v. Norwest Bank, N.A.*, 907 F.Supp. 1284, 1288 (D. Minn. 1995) (UCC preempts common law tort claims arising out of commercial transactions).

Finally, the "economic loss doctrine" bars recovery of purely pecuniary losses in tort when the injury results from breach of contractual duty. *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F.Supp. 2d 818, 827 (E.D. Mo. 2013); *Zoltek v. Structural Polymer Group, Ltd.*, 2008 U.S. Dist. LEXIS 92714 at *8-9 (E.D. Mo.) (doctrine barred claim for alleged misrepresentations regarding a key provision in contract); *Tcp Printing Co., LLC v. Enter. Bank & Tr.*, 2017 U.S. Dist. LEXIS 162267, at *23-24 (E.D. Mo.) (plaintiff cannot maintain an equitable claim for unjust enrichment when an express contract governs the subject matter for which recovery is sought). Counts II through VIII are common law tort claims for pecuniary losses or equitable remedies that Plaintiff alleges resulted from BOS's alleged duty not to use Gateway's deposit account containing GM payments. That alleged duty only arises from the Subordination Agreement. The economic loss doctrine bars these counts.

### B. Count II - Conversion

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002). First, conversion generally does not apply to the recovery of money, except where "a plaintiff placed funds 'in the custody of another for a specific purpose,' and the defendant diverts those funds 'for other than such specified purpose.'" *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015)(quoting *Dillard v. Payne*, 615 S.W.3d 53, 55 (Mo. 1981)). Plaintiff does not and cannot allege that it placed payments from GM in the custody of BOS for a specific purpose. Second, even if the action of conversion were available to recover money here, Plaintiff had no right to immediate possession of funds in Gateway's deposit account. Plaintiff had to take control of the account to satisfy this pre-

requisite. UCC §§ 400.9-440 and 9-441. Plaintiff alleges neither point supporting a right to immediate possession. Count II does not state a claim for which relief can be granted.

### C. Count III – Unjust Enrichment

Missouri law does not allow a claim for unjust enrichment when an express contract governs the subject matter. *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 955-56 (8th Cir. 2016) (citing *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014). In that instance, the plaintiff's rights are limited to the express terms of the contract and its sole theory of recovery must be under the contract. *Id.*; *Speaks Family Legacy Chapels Inc. v. Nat'l Heritage Enters.*, 2009 U.S. Dist. LEXIS 67086 at *13 (W.D. Mo.) Plaintiff's claims, if any, are limited to those brought under the Subordination Agreement.

Even if that were not the case, Plaintiff still has not adequately pled all of the elements of unjust enrichment: (1) that defendant was enriched by the receipt of a benefit *by the plaintiff*; (2) that the benefit was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Legacy Chapels* at *13-14. In this case, GM, if anyone, not Plaintiff, conferred a benefit on Gateway, not Plaintiff, when GM paid accounts receivable into Gateway's deposit account. Plaintiff does not allege that money passed from Plaintiff to BOS. Furthermore, BOS's actions were entirely proper under Missouri UCC §§ 9-440 and 9-441 and as a matter of law cannot be considered "unjust." Count III does not state a claim for unjust enrichment.

### D. Count IV – Fraudulent Inducement; Count V – Negligent Misrepresentation

Rule 9(b) requires particularity in a fraud pleading:

> Claims subject to the particularity requirements must be pled to include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was

> obtained or given up thereby." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (citations omitted). As a general matter, the "who, what, when, where, and how" of any fraud claim must be pled in detail. Id. at 550 (citations omitted).

*Smith v. Questar Capital Corp.*, 2014 U.S. Dist. LEXIS 77183, *10 (D. Minn. 2014). *See also, Infonow Solutions of St. Louis, LLC v. Nat'l City Corp.*, 2008 U.S. Dist. LEXIS 65656 at *14 (E.D. Mo. 2008). Rule 9(b) applies to both fraud and negligent misrepresentation claims. *Smith*, at *35-36.

Here, Plaintiff alleges that someone at BOS promised not to "assert any interest" in proceeds from floor-planned vehicles. Plaintiff does not allege who made the alleged misrepresentation, how they made it, or when. The claim is specious, at best, considering that the Subordination Agreement—which allegedly followed the alleged fraud and which explicitly deals with the parties' competing rights to these proceeds—contains no such promise *and* grants BOS broad rights to use and dispose of Collateral without first identifying its source.

The Court should dismiss Counts IV and V.

### E. Count VI - Equitable Claim for Rescission

Rescission is a remedy for fraud, not a separate claim. *Chi. Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Bhd. Labor Leasing*, 950 F. Supp. 1454, 1469 (E.D. Mo. 1996). Rescission is not available here because Plaintiff's fraud claims fail as a matter of law.

Moreover, as a prerequisite to rescission, Plaintiff must tender the return of all benefits received under the Subordination Agreement. *Murphy v. Nw. Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 43627, at *29 (W.D. Mo. 2005). Plaintiff alleges no such tender.

Rescission also depends upon the ability of the Court to return the parties to the positions they occupied before the contract was executed. *Bhd. Labor Leasing*, 950 F. Supp. at 1470. That obviously would be impossible here. BOS extended credit—millions of dollars of credit—to a now bankrupt corporation, and made credit decisions along the way. Plaintiff has no way of restoring the parties to the status quo *ante*, and does not even allege that it can or will.

The Court should dismiss Count VI.

### F.     Count VII – Constructive Trust

A constructive trust is, like rescission, a remedy for fraud, not a separate claim. *Barnes v. Heckman (In re Material Eng'g Assocs.)*, 168 B.R. 204, 211 (Bankr. W.D. Mo. 1994) citing *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. 1993). Because none of Plaintiff's underlying claims that might support the imposition of a constructive trust state a claim, the Court should dismiss Count VII.

### G.     Count VIII – Money Had and Received

Money had and received is an adjunct to unjust enrichment and, like unjust enrichment, will not stand where the parties' relationship is governed by an express contract. *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014). The Subordination Agreement governs the rights and duties between Plaintiff and BOS and Plaintiff's claims, if any, arise thereunder. Plaintiff cannot maintain a separate action under Count VIII.

In addition, the elements of a claim for money had and received parallel those of a claim for unjust enrichment. *Speaks Family Legacy Chapels* at *13. The claim thus fails for the same reasons as Plaintiff's unjust enrichment claim. *See* Part II.C.

## CONCLUSION

The Subordination Agreement and Article 9 of Missouri's UCC determine whether BOS properly applied the collateral contained in Gateway's deposit account. In Count I, the agreement itself proves that BOS's actions did not violate any provision as a matter of law. Further, BOS's application of Gateway's deposit account funds was proper under the UCC. Counts II through VIII are common law tort claims or remedies that either (1) are preempted by the UCC, which governs BOS's actions, or (2) individually do not adequately plead a claim for relief.

WHEREFORE, Defendant, BANK OF SPRINGFIELD, prays that Plaintiff's First Amended Complaint be dismissed in its entirety for failure to state a claim on which relief can be granted.

## PROOF OF SERVICE

I hereby certify that on November 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Spencer P. Desai
Kyle P. Lane
CARMODY MACDONALD P.C.
120 South Central Avenue, Suite 1800
St. Louis, MO 63105
spd@carmodymacdonald.com
kpl@carmodymacdonald.com

        By   /s/Paul J. Puricelli
            Paul J. Puricelli   32801MO
            7733 Forsyth Boulevard, Suite 500
            St. Louis, Missouri  63105
            (314) 721-7011 (telephone)
            (314) 721-8660 (telecopy)
            pjp@stoneleyton.com