UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NEXTGEAR CAPITAL, INC.,     )
    )
    Plaintiff,     )
    )
v.     )   Case No. 18-CV-01086-NCC
    )
BANK OF SPRINGFIELD,     )
    )
    Defendant.     )

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**Introduction**

This is a dispute between two lenders to the now defunct Gateway Buick GMC ("Gateway"), which operated a General Motors dealership in Hazelwood, Missouri. Plaintiff was Gateway's "floor plan" lender and financed Gateway's automobile purchases secured by a security interest in all of Gateway's assets (2nd AC ¶9).[1] Defendant Bank of Springfield ("BOS") thereafter provided working capital and mortgage lending to Gateway (2nd AC ¶10). Plaintiff and BOS signed a subordination agreement, which was necessary because GM deposited various "Open Account" payments into a BOS account, including funds that remained subject to Plaintiff's security interest after the banks signed the subordination agreement. With Plaintiff's knowledge and consent, BOS applied *all* those funds to outstanding BOS loans.

Plaintiff's Second Amended Complaint, filed after Defendant moved to dismiss the First Amended Complaint, is old wine in a new bottle. Plaintiff adds cryptic and conclusory allegations designed to plead around what it cannot—namely, the fact that "Section 9-332 of Revised [Missouri UCC] Article 9 recites that a transferee of cash proceeds takes the cash free of

---

[1] References to the Second Amended Complaint, document #19, shall be as "2nd AC".

1

any security interest in the cash proceeds unless the transferee acts in collusion with the debtor in violating the rights of the secured party." *GE Capital Corp. v. Union Planters Bank, NA (In re Machinery),* 342 B.R. 790, 798 (E.D. Mo. Bkrtcy. 2006).

The problem with this pleading, like the one before it, is that Plaintiff *knew* that BOS was drawing against the account, and Plaintiff failed to object to the practice or take any steps to stop it (as Plaintiff had apparently done with other Gateway lenders).  BOS had every right to draw against its account to repay money it loaned to Gateway.  The Court should dismiss the Second Amended Complaint in its entirety.

**Background**

As indicated, as Gateway's floor plan lender, Plaintiff held a security interest in all Gateway's accounts receivable, including payments from GM (2nd AC ¶10).  On October 1, 2015, to induce BOS to extend credit to Gateway, Plaintiff executed a Subordination Agreement (2nd AC ¶11, Ex. H).  Under the Subordination Agreement, Plaintiff agreed to subordinate its security interest in Gateway's Open Accounts[2] receivable with GM, "except to the extent, if any, that such GM Open Accounts Receivable constitute proceeds of specific vehicles floor planned for [Gateway] and for which [Plaintiff] remains unpaid in whole or in part" (2nd AC ¶12).  The excepted payments consisted of rebate and holdback payments related to floor-planned vehicles (2nd AC ¶15)(hereinafter "Rebates").

BOS extended financing to Gateway through a series of three loans, a loan secured by a mortgage on Gateway's real estate and two revolving lines of credit secured by Gateway's GM accounts receivable (2nd AC ¶7, Exs. A-C).  Plaintiff and BOS understood and

---

[2] A dealership's "Open Account" is a mechanism that records the various debits and credits occurring between the dealer, the factory and GM arising out of the dealership operations—i.e., a dealer's payments for parts, GM's incentive payments, and so on.  Receivable balances owed the dealer are deposited in the dealer's bank account, in this case, accounts maintained at Regions Bank and BOS (2nd AC ¶25, 27).

2

agreed that GM would deposit Open Account payments, including Rebates, into Gateway's BOS bank account, and that BOS could and would apply those deposits to pay its loans. In its First Amended Complaint, Plaintiff attached no controversy to the practice:

> 18. As part of the pay down of the BOS Notes, BOS would setoff funds from Gateway's deposit account at BOS.
>
> 19. General Motors would deposit rebate, holdback and incentive payments into the BOS account. BOS was aware that rebate and holdback payments, constituting NextGear Vehicle Funds, were being deposited into the Gateway's account at BOS. (Doc #5, ¶s 18,19)

In the Second Amended Complaint, Plaintiff now alleges that GM made the deposits "at the direction of Gateway and with the knowledge of BOS" (2nd AC ¶28), suggesting, but not saying how the practice was suspect. Plaintiff alleges that BOS and Gateway acted in concert to direct GM's deposits "in violation of the Subordination Agreement, Floorplan Note and the Amended and Restated Forbearance Agreement," without further explanation (2nd AC ¶33). Elsewhere, Plaintiff similarly alleges that BOS and Gateway "worked in concert to place NextGear Vehicle Funds in the possession of BOS" and that BOS "induced Gateway to deposit funds" into its account (2nd AC ¶s 50, 62). Plaintiff does not allege how BOS or Gateway induced GM to direct payments, how that practice differed from what the parties anticipated, how BOS worked "in concert" with Gateway or how the resulting deposits violated any of the referenced agreements.

In point of fact, the Subordination Agreement did not limit or restrict BOS's use of *any* GM payments. Plaintiff did not ask BOS to execute a "control agreement," a common method by which senior lenders protect their interest in cash accounts, although Plaintiff apparently required other financial institutions to sign such agreements: "General Motors payments consisting of NextGear Vehicle Funds were to be deposited into the Regions Bank

3

Account *which was subject to a control agreement with Plaintiff*" (2nd AC ¶25)(emphasis added).³

Plaintiff alleges claims for Breach of Contract (Count I), Conversion (Count II), Unjust Enrichment (Count III), and Tortious Interference (Count IV).  None of the theories states a claim for relief.  The Court should dismiss the Second Amended Complaint.

## ARGUMENT

**I.     STANDARD OF REVIEW**

The Court must construe the Complaint in the light most favorable to Plaintiff and accept the well-pleaded factual allegations as true.  *Chartis Specialty Ins. Co. v. Vaughan Foods, Inc.*, 2017 U.S. Dist. LEXIS 13712 at *3 (E.D. Mo. 2017).  "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."  *Id.* at *4,* citing *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). While the Federal Rules permit some leeway at the pleading stage:

> Pleaders must allege enough fact to raise their claims beyond the level of speculation, by "nudg[ing] their claims across the line from conceivable to plausible."  To cross into this "realm of plausible liability," a pleader's allegations must be factual (not conclusory) and suggestive (not neutral).  Thus, a successful pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action.

Baicker-McKee, Janssen, Corr, *Federal Civil Rules Handbook 2019* at 429 (citations omitted).

**I.     THE COURT SHOULD DISMISS COUNT I FOR BREACH OF THE SUBORDINATION AGREEMENT BECAUSE NEITHER THE SUBORDINATION AGREEMENT NOR THE UCC PROHIBITS PAYMENTS TO A JUNIOR CREDITOR ABSENT ACTUAL COLLUSION BETWEEN THE JUNIOR CREDITOR AND THE DEBTOR THAT INCLUDES SEPARATELY WRONGFUL CONDUCT BY THE JUNIOR CREDITOR, WHICH IS NOT ALLEGED HERE**

---

³ Plaintiff also apparently entered into a control agreement with Gateway (2nd AC, Ex. I at ¶3.F).

4

The Subordination Agreement established the competing priorities of Plaintiff's and BOS's security interests, nothing more.  The Subordination Agreement did not restrict BOS's use of Gateway's deposit account based upon the origin of the funds or any other criteria.  In fact, until BOS filed its first motion to dismiss, Plaintiff acknowledged that GM routinely deposited Rebates in BOS's account and BOS routinely applied those GM deposits to repay BOS's loans to Gateway.  Although Plaintiff never says why, Plaintiff now takes the position that *Gateway's* default under loans with Plaintiff and *Gateway's* execution of a forbearance agreement with Plaintiff turned that practice into something actionable (2nd AC ¶33).

Article 9 of the Missouri UCC requires more than Plaintiff's supposition or suggestion to make out such a case.  Under §400.9-332, "a transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party."  The UCC drafters point out that the collusion standard "is the most protective (i.e., least stringent) of the various standards now found in the UCC."  Mo.Rev.Stat. §400.9-332, cmt 4.  Thus, it no longer matters whether the junior lender withdrew funds in or out of the ordinary course of business.  *GE Capital Corp. v. Union Planters Bank, NA (In re Machinery),* 342 B.R. 790, 798 (E.D. Mo. Bkrtcy. 2006).  Instead, Plaintiff must show:

> Missouri courts have held that a person may only be liable for the action of another under the collusion standard of Section 876 of the Restatement if there is evidence that the two parties acted pursuant to an agreement or otherwise in concert with each other.  Missouri courts also require that the purpose of the concerted action be illegal, fraudulent or otherwise wrongful towards the injured third-party.  **Missouri law additionally requires that the defendant's action itself, separately considered, be wrongful with respect to the injured third-party**.

*Id.,* at 799 (citations omitted)(emphasis added).

5

Plaintiff alleges that BOS and Gateway "acted purposefully and in concert in directing NextGear Vehicle Funds to be deposited at BOS for payment of the BOS Notes in violation of the Subordination Agreement, FloorPlan Note and the Amended and Restated Forbearance Agreement" (2nd AC ¶33).  Plaintiff's vague allegation of some sort of agreement entered into between BOS and Gateway and some point in time falls well short of establishing the requisite collusive action:  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality…[T]hey must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Further, it is not stated, and it is difficult to understand how such a direction, when and if it actually occurred, violated any of the referenced agreements.  First, Plaintiff entered into the Subordination Agreement precisely *because* Plaintiff expected and agreed that GM would routinely deposit proceeds and other payments into a BOS account.  BOS did nothing illegal, fraudulent or wrongful by following that understanding.   Moreover, Article 9 affords substantial leeway to transferees of funds subject to third party security interests.  Under §400.9-340, for example, a bank's right of set-off against a deposit account takes priority over a secured party's interest unless the secured party perfects its security interest by control under §400.9-104(a)(3).  Section 400.9-341 provides that a depository bank's rights to a deposit account are not affected by a security interest, even one known to the bank, unless the bank has so agreed in an authenticated writing.

Seemingly underlying Plaintiff's allegations is the suggestion that BOS was obligated under the Subordination Agreement to identify and segregate Plaintiff's collateral. That has never been the law:

6

> GE Capital also contends that Union Planters should not be afforded the protection of § 9-332(a) because Union Planters could have segregated the Lift Proceeds, but failed to do so. As stated above, however, a junior secured creditor was under no obligation to identify and segregate cash proceeds for the benefit of the senior secured creditor under Comment 2(c) to § 9-306 to Prior Article 9. This was the case even if the junior secured creditor knew of the senior secured party's interest. Id. Given that the collusion standard in § 9-332(a) is more deferential to transferees, § 9-332(a) does not impose a duty on a transferee of cash proceeds to identify and segregate the proceeds absent a contractual obligation to do so.

*GE Capital Corp.,* 342 B.R. 799-800 (E.D. Mo. Bkrtcy. 2006), citing *GE Capital Corp v. Union Planters Bank, NA,* 409 F.3d 1049, 1057 (8th Cir. 2005).

There are no allegations anywhere in the Complaint that spell out how BOS and Gateway's alleged concerted action violated either the Floorplan Note or the Amended and Restated Forbearance Agreement, and the Complaint certainly gives no indication as to how BOS's conduct was wrongful when "separately considered." As indicated, BOS was never under any obligation to identify and segregate Plaintiff's funds. For the sake of argument only, even if BOS knew that Gateway was in breach of its Floorplan Note and the Amended and Restated Forbearance Agreement, nothing in *any* of those documents limited BOS's use of funds deposited into Gateway's account. In fact, to the contrary, Plaintiff had the opportunity to restrict or limit Gateway's use of GM deposits at BOS in its forbearance agreement with Gateway, but required *only* that Gateway "shall not obtain any additional loan advances from [BOS]." (2nd AC, Ex. I at ¶3.C).

As a matter of law, BOS did not breach the Subordination Agreement by applying deposits in Gateway's deposit account to repay advances under Gateway's line of credit. The Court should dismiss Count I.

## II. THE COURT SHOULD DISMISS COUNTS II-IV BECAUSE THEY ARE PRE-EMPTED BY THE MISSOURI UCC, ARE BARRED BY THE ECONOMIC LOSS DOCTRINE AND OTHERWISE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. The UCC Pre-empts Counts II-IV

The UCC displaces and pre-empts all common law claims that create rights, duties, or liabilities inconsistent with the UCC where the circumstances of the common law claims are specifically covered by the UCC. *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 2011 U.S. Dist. LEXIS 70566 at *8-9 (W.D. Mo.)(collecting numerous decisions from other state and district courts). *See also, Zerjav v. JP Morgan Chase Nat'l Corporate Servs.*, 185 F. Supp. 3d 1149, 1154 (E.D.Mo. 2016)(Article 3 displaces conversion claim); *Cub Cadet Corp. v. Mopec, Inc.*, 78 S.W.3d 205, 209 (Mo. Ct. App. 2002)(common law contrary to UCC "cannot apply").

Counts II through IV all incorporate by reference and arise out of the same circumstances as the claims in Count I which are expressly subject to and governed by Article 9. Counts II through IV clearly seek remedies inconsistent with the rights and obligations of the secured parties here involved under Article 9. For example, Plaintiff's conversion claim and unjust enrichment claims would require the Court to conclude that BOS undertook a heretofore unrecognized duty to segregate and return Plaintiff's collateral. Plaintiff's tortious interference claim would require the Court to override the longstanding protections afforded banks under Article 9. *See* UCC §§ 9-322 (deposit account transfers are free and clear of security interests unless collusion to harm secured creditor exists), 9-340 (bank's set-off and recoupment rights are not diminished by senior security interests), and 9-341 (bank may continue to treat debtor as customer of deposit account unless creditor has taken control of account). Allowing common law tort claims to proceed under circumstances governed by the UCC would defeat the

8

legislative intent to prescribe the applicable duties and liabilities governing depository banks and secured creditors. *Impulse Trading v. Norwest Bank, N.A.*, 907 F.Supp. 1284, 1288 (D. Minn. 1995) (UCC preempts common law tort claims arising out of commercial transactions).

### B. The Economic Loss Doctrine Bars Counts II and IV

The "economic loss doctrine" bars recovery of purely pecuniary losses in tort when the injury results from breach of contractual duty. *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F.Supp. 2d 818, 827 (E.D. Mo. 2013); *Zoltek v. Structural Polymer Group, Ltd.*, 2008 U.S. Dist. LEXIS 92714 at *8-9 (E.D. Mo.) (doctrine barred claim for alleged misrepresentations regarding a key provision in contract). Counts II and IV allege tort claims for pecuniary losses arising, if at all, from BOS's alleged breach of the Subordination Agreement. The economic loss doctrine bars these counts.

### C. Plaintiff's Conversion Claim Fails To State A Claim

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002). Conversion generally does not apply to the recovery of money, except where "a plaintiff placed funds 'in the custody of another for a specific purpose,' and the defendant diverts those funds 'for other than such specified purpose.'" *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015)(quoting *Dillard v. Payne*, 615 S.W.3d 53, 55 (Mo. 1981)). Plaintiff did not deposit any money with BOS, GM did. Further, Plaintiff does not and cannot allege that GM deposited those funds for any specific purpose. Even if the BOS account is subject to a conversion claim, Plaintiff had no right to possession of the funds until Plaintiff either perfected its security interest or otherwise assumed control of the account. UCC §§400.9-440 and 9-441. Plaintiff did neither.

Count II fails to state a claim for which relief can be granted.

9

### D. Plaintiff's Unjust Enrichment Claim Fails To State A Claim

Missouri law does not allow a claim for unjust enrichment when an express contract governs the subject matter. *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 955-56 (8th Cir. 2016) (citing *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014). Plaintiff's claims, if any, are limited to those brought under the Subordination Agreement. *Id.*; *Speaks Family Legacy Chapels Inc. v. Nat'l Heritage Enters.*, 2009 U.S. Dist. LEXIS 67086 at *13 (W.D. Mo.); *Tcp Printing Co., LLC v. Enter. Bank & Tr.*, 2017 U.S. Dist. LEXIS 162267, at *23-24 (E.D. Mo.)(plaintiff cannot maintain an equitable claim for unjust enrichment when an express contract governs the subject matter for which recovery is sought).

Even if that were not the case, Plaintiff must allege and prove the following under its unjust enrichment claim: (1) that defendant was enriched by the receipt of a benefit *by the plaintiff*; (2) that the benefit was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Legacy Chapels* at *13-14 (emphasis added). GM, if anyone, conferred a benefit on Gateway, not Plaintiff, when GM paid open accounts receivables into Gateway's BOS account. Plaintiff does not allege that money passed from Plaintiff to BOS. Further, as previously discussed, BOS's actions were entirely proper under Missouri UCC §§ 9-440 and 9-441 and as a matter of law cannot be considered "unjust." Count III does not state a claim for unjust enrichment.

### E. Plaintiff's Tortious Interference Claim Fails To State A Claim

Under Missouri law, a claim for tortious interference with a contract, business relationship, or business expectancy requires proof of: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendants' conduct. *Community*

10

*Title Co. v. Roosevelt Federal Say. & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo. 1990); *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. 1993); *Stehno v. Sprint Spectrum, L.P.,* 186 S.W.3d 247, 250 (Mo. 2006).

Missouri law does not prevent a defendant from acting to protect its own economic interests:

> It is not justification to knowingly procure the breach of a contract where the defendant acts with an improper purpose and seeks not only to further his own interests, but in doing so employs improper means. But there is no impropriety of self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy. One who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest. No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification.

*Community Title,* 796 S.W.2d at 372 (citations omitted). "Improper means" requires proof that BOS used "means which are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Nazeri,* 860 S.W.2d at 317.

Under the well-pleaded facts, BOS both had an unqualified right to use GM funds and did not employ any "improper means" when it did so. As to the former, Article 9 explicitly authorized BOS's draws against Gateway's account, absent Plaintiff's perfection of its security interest or exercise of control over the funds. *See* Mo.Rev.Stat. §§400.9-332, 9-340 and 9-341 and discussion *supra*. And the parties' Subordination Agreement contemplated that BOS would do so. Plaintiff alleges that BOS acted to "facilitate repayment of the BOS Notes" (2nd AC ¶63), "[b]ut there is no impropriety of self-interested interference when a defendant has a

11

legitimate economic interest in the contract or expectancy." *Nazieri, supra.* Plaintiff knew and expected that BOS would act to protect its own economic interests in the GM payments, which is presumably what motivated Plaintiff to require the limited protections afforded under the Subordination Agreement.

As to the latter, Plaintiff does not use the words "improper means" in its Complaint, and Plaintiff's allegations do not rise to the level required by *Nazieri*. Plaintiff's Second Amended Complaint acknowledges, as it must, that BOS had a banking relationship with Gateway and, therefore, had a contractual and a financial interest in the affairs of Gateway, including, obviously, repayment of its loans. Plaintiff's bare allegation that "there is no reasonable justification" for BOS's actions except the "desire to facilitate repayment of the BOS notes" does not even intimate the "threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade" contemplated by the Supreme Court in *Nazieri*.

In *NTD I, LLC v. Alliant Asset Mgmt. Co., LLC,* 2017 U.S. Dist. LEXIS 21050 (E.D.Mo. 2017)(Webber, J.), this Court pointed out that:

> Pleading "improper means" usually requires allegations of threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or common law. **Such improper means must be pled.** Mere conclusions of a pleader not supported by factual allegations cannot be taken as true, and therefore, must be disregarded in determining whether the petition states a claim upon which relief can be granted.

*Id.,* at *24 (citations omitted; emphasis added). In *NTD I,* Alliant was a limited partner in a single purpose entity that developed a low income tax credit financed apartment complex. Alliant denied that certain contractual preconditions had been satisfied that would require the limited partners to make capital contributions—which would have funded the general partner's development fee. The general partner sued, alleging Alliant caused the limited partners to breach

12

the partnership agreement "without justification." *Id.,* at *25.  This court rejected that allegation as "a mere formulaic recitation of the element and lacks the required factual assertions to establish improper means." *Id.*  The general partner suggested that the Court might infer the absence of justification from other allegations in the Complaint, but this Court disagreed and its analysis compels the same result here:

> The Court does not find Plaintiffs' allegations are sufficient to establish a lack of justification for their interference.  Here, Alliant has an existing economic interest in the business affairs of the Limited Partners, and, therefore, the Partnership.  As such, they were entitled to actions protecting their economic interest *unless* they employed improper means.  In an attempt to establish improper means, Plaintiffs, in their Memorandum in Opposition, attempted to characterize Alliant's alleged challenge to Water Tower Place's attainment of Rental Achievement as an improper "misrepresentation of fact."  However, the alleged denial is more properly categorized as a dispute over a contract term.

*Id.,* at *25-26.

Plaintiff's belief, no matter how deeply held, that BOS's draws were "without justification" is not enough to state a claim for relief.  Plaintiff's attempt to characterize or infer that otherwise legal, proper and properly motivated actions were somehow wrongful also fails settled pleading principles.

The Court should dismiss Count IV.

## **CONCLUSION**

For all the foregoing reasons, BOS respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint with prejudice.

**PROOF OF SERVICE**

      I hereby certify that on January 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Spencer P. Desai
Kyle P. Lane
CARMODY MACDONALD P.C.
120 South Central Avenue, Suite 1800
St. Louis, MO  63105
spd@carmodymacdonald.com
kpl@carmodymacdonald.com

                                         By    /s/Paul J. Puricelli
                                              Paul J. Puricelli   32801MO
                                              7733 Forsyth Boulevard, Suite 500
                                              St. Louis, Missouri  63105
                                              (314) 721-7011 (telephone)
                                              (314) 721-8660 (telecopy)
                                              pjp@stoneleyton.com