UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-01086-NCC |
| | ) | |
| BANK OF SPRINGFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff NextGear Capital, Inc. ("NextGear"), by and through its undersigned attorneys, and for its Memorandum in Opposition to Defendant Bank of Springfield's ("BOS") Motion to Dismiss Second Amended Complaint (the "Motion"), states as follows:

**INTRODUCTION**

Defendant's Motion to Dismiss is, at worst, wholly unfounded, and at best, premature. Under either analysis, Defendant's Motion fails and should be denied. Rather than addressing the allegations raised in NextGear's Second Amended Complaint (the "Complaint") as required by the Federal Rules of Civil Procedure, BOS instead litters its Motion with unsubstantiated factual statements which conveniently fit into its narrative.

As set forth in the Complaint, NextGear alleges four causes of action: (1) Breach of Contract, (2) Conversion, (3) Unjust Enrichment and (4) Tortious Interference. The Complaint pleads more than sufficient facts to establish all the required elements for each of the claims. As such, this Court should deny in its entirety BOS' Motion.

## **BACKGROUND**

Gateway Buick GMC, Inc., d/b/a Gateway Buick GMC ("Gateway") is a Delaware corporation which operated an automotive dealership at 820 James S. McDonnell Blvd., Hazelwood, Missouri 63042.  Prior to May 2018, Gateway was a General Motors ("GM") licensed franchisee/dealer engaged in selling new Buick and GMC vehicles as well as used vehicles.  In addition to automobile sales, Gateway also provided maintenance and other related services to vehicles.

Given the considerable expense of operating an automobile dealership – including the cost of maintaining a large quantity of vehicles – automobile dealers cannot afford to pay cash for their inventory.  Therefore, dealers must look to companies like NextGear to provide financing for their vehicle inventory.  This type of financing, which NextGear agreed to provide Gateway, is known as floorplan financing.

Under floorplan financing agreements, the dealer must immediately remit payment for a financed vehicle when it is sold (the "Vehicle Proceeds").  Additionally, the dealer is also obligated to pay interest for the amount of the floorplan financing and, if a vehicle remains unsold for a certain period of time, the dealer must pay a curtailment fee  as well.  Should the dealer fail to remit the Vehicle Proceeds within the contractual timeframe (in the case of Gateway/NextGear it was 48 hours), the sale is considered "out of trust."

In addition to the floorplan financing provided by NextGear, BOS provided several revolving lines of credit to Gateway.  The BOS loans were primarily secured by a lien on the real estate owned by Gateway.  NextGear held a senior lien position in the accounts receivable of Gateway, including all funds Gateway received from GM.

On or about October 1, 2015, Gateway, NextGear and BOS entered into a Subordination Agreement in which NextGear agreed to subordinate "all of Debtor's [Gateway's] open accounts with General Motors that are now or may in the future be owed to Debtor to General Motors ("GM Open Accounts Receivable"), *except to extent, if any, that such GM Open Accounts Receivable constitute proceeds of specific vehicles floor planned for Debtor by Creditor [NextGear] and for which Creditor remains unpaid in whole or in part*." (emphasis added). Simply put, NextGear retained its priority position in Vehicle Proceeds.

Beginning in 2016, Gateway was in default with NextGear for continued out of trust sales.  In May 2016, Plaintiff and Gateway entered into a Forbearance Agreement.  The Forbearance Agreement was necessitated by Gateway's failure to remit payment for vehicles Gateway sold subject to the floorplan or, "out of trust."  In July 2017, Plaintiff and Gateway entered into an Amended and Restated Forbearance Agreement which acknowledged further defaults by Gateway under the floorplan.

During this time, BOS was aware of Gateway's financial issues and its default with NextGear.  Interestingly, under the terms of BOS's loan documents, Gateway's default with NextGear was also an event of default with BOS.  Additionally, the Amended and Restated Forbearance Agreement between Gateway and NextGear specifically prohibited Gateway from accepting additional loan advances from BOS.  In spite of this provision, as was known to BOS, the advances continued using, in part, NextGear's Vehicle Proceeds.

Following Gateway's failed refinancing attempts, which included the BOS loans, NextGear filed an action for replevin in St. Louis County Circuit Court on April 2, 2018.  The following day, on April 3, 2018, Gateway filed a Petition for Chapter 11 bankruptcy.  Prior to

Gateway's filing of bankruptcy, NextGear successfully seized most of Gateway's vehicle inventory.

Gateway's Chapter 11 filing exposed the extent of Gateway's financial problems and shed light on its collusive relationship with BOS.  In fact, BOS was so concerned about its exposure for its breach of the Subordination Agreement and the handling of the NextGear Vehicle Proceeds, that it insisted upon insertion of the following provision in the Interim Cash Collateral Order:

> *NGC and BOS agree and stipulate that each of their consent to entry of this Order is made without prejudice and with full reservation of rights pursuant to that Security Interest Subordination Agreement ("Subordination Agreement") dated October 1, 2015.  However, NGC and BOS further stipulate and agree that no claim under the Subordination Agreement shall be made by either party as to the $98,000 the Debtor is authorized to use during the Interim Cash Collateral Period.*
> *In re Gateway Buick*, 18-42085, (Bky.E.D.Mo) at *¶F - Interim Cash Collateral Order dated 4/13/2018* [ECF #55],

Gateway was never able to reopen business operations and its efforts to sell the dealership have failed.  As of January 2019, a Motion to Dismiss the bankruptcy case was pending before the court.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, this Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012).  The

4

factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Crop. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted).  A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## ARGUMENT

## I.     The Complaint properly alleges sufficient facts to support a cognizable legal claim.

Through its Motion, BOS seeks to usurp the well-established standard of review by which this Court must "accept as true all facts pleaded by the non-moving party" by arguing unsubstantiated facts that are not contained in NextGear's Complaint.  *See Gallagher*, 699 F.3d at 1016.  However, the issue presented "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim."  *Ford v. St. Louis Metro. Towing, L.C.*, 2010 WL 618491 (E.D. Mo. Feb 18, 2010).

Furthermore, BOS asks this Court to dismiss the case before the parties have made any disclosures or engaged in any discovery.  At this early stage of litigation, NextGear is not yet privy to the banking and loan records of Gateway's BOS accounts nor has it seen the revolving loan transaction.  Consequently, at the present moment, NextGear can only rely on the sparse information provided by Gateway in its ill-fated journey through Chapter 11 and Gateway's timeline of loan agreements, forbearance agreements, and defaults.  Nonetheless, taken as a whole, NextGear's Complaint at a minimum raises a reasonable inference that BOS committed the misconduct alleged. *See Gallagher,* 699 F.3d at 1016; *See also, Harvey v. Gen. Elec. Co.,* 4:10CV02102 HEA, 2012 WL 3733582, (E.D. Mo. Aug. 28, 2012) (refusing to dismiss a

Complaint without providing the Plaintiff with the opportunity to conduct limited discovery to supports its claims).

**II.      UCC § 400.9-332 does not provide blanket immunity for Bank of Springfield.**

BOS argues that the provisions of UCC § 400.9-332, which allows a transferee of funds from a deposit account to take those funds free of a security interest in the deposit account is a "get out of jail free card" that allowed it to act with impunity and without regard for NextGear's superior lien in specific funds Gateway received and paid to BOS.  However, contrary to BOS' assertion, the UCC does *not* provide a transferee "blanket" immunity in funds from a deposit account irrespective of whether that transferee acted in good faith.

Moreover, although § 400.9-332 provides certain protections to transferees, those protections are limited to circumstances in which the transferees have not acted in collusion with the debtor.  In its Complaint, NextGear has specifically pled facts that (a) support its assertion that BOS colluded with Gateway by acting in concert to evade the reach of NextGear's security interest; and (b) demonstrate the inapplicability of § 9-332.  In short, BOS' attempt to dismiss NextGear's claims under § 400.9-332 must fail.

**a.      RSMo 400.9-332 does not protect a transferee who acted in collusion with the debtor to violate the rights of a secured party.**

RSMo 400.9-332 specifically eliminates protections for transferees who act in collusion with the debtor to violate the rights of a secured party.  This is exactly what NextGear has alleged in its Complaint.  On this basis alone, NextGear's Complaint is sufficient to withstand BOS' attempt at dismissal.

To prove collusion there must be "evidence that the two parties acted in concert with each other…that the purpose of the concerted action be illegal, fraudulent or otherwise wrongful towards the injured third-party" *GE Capital Corp. v. Union Planters Bank, NA,* 342 B.R. 7901,

797 (E.D. Mo. Bkrtcy. 2006).  Additionally, Missouri law "requires that the defendant's action itself, separately considered, be wrongful with respect to the injured third-party." *Id.*

In its Complaint, NextGear alleges:

- NextGear held a senior lien position to BOS in Gateway's payments from GM except as set forth in the Subordination Agreement (Compl. ¶¶ 10, 11);
- A year after entering into the Subordination Agreement, Gateway was in default with NextGear and was selling vehicles out of trust (Compl. ¶¶ 16 & 17);
- BOS was aware of the conduct of Gateway and its default with NextGear (Compl. ¶ 18);
- As a result of Gateway's default with NextGear, Gateway was in default with BOS (Compl. ¶ 21);
- BOS acted purposefully and in concert with Gateway regarding the deposit of funds into Gateway's BOS account (Compl. ¶ 33).

Because NextGear has pled each element of collusion, it has stated a facially plausible claim.

Further, BOS incorrectly argues that NextGear has not pled collusion with sufficient specificity, while ignoring the fact that BOS engaged in conduct as transferee while Gateway was in default under its agreements with **both** NextGear and BOS.  Gateway's failure to remit sales tax for vehicles sold, NextGear's efforts to control the proceeds of vehicle sales, and Gateway's insatiable need for cash were all known to BOS.  It stretches the boundaries of reality to ignore the convenient fact that NextGear's deficiency claim grew while BOS continued to service and, presumably, re-advance its revolving line of credit.  *See Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 2009) ("it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests…") (*quoting Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)).

These facts, all pled and undisputed, support NextGear's allegations of collusion between Gateway and BOS.  Only upon further investigation and discovery will NextGear be able to

complete to picture with detail.   Therefore, despite BOS' attempt to deny NextGear the opportunity to develop its case through discovery by prematurely seeking dismissal, NextGear has alleged facts sufficient to support the occurrence of collusion.  *See Braden*, 588 F.3d at 597 ("[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject.").

**b.**      **UCC § 9-332 is not applicable under these facts.**

The Subordination Agreement between BOS and NextGear was *specifically* tailored to grant BOS priority in a narrow band of payments Gateway received from GM.   The Subordination Agreement was entered into by the parties with the knowledge and understanding that the proceeds of NextGear's collateral were to be deposited by Gateway into an account at Regions Bank.

As set forth in the Complaint, BOS was aware of NextGear's issues with Gateway beginning in 2016 and 2017. (Compl. ¶ 16-18).  Further, BOS knew, or should have known, that Gateway was diverting funds from floor-planned vehicle sales to BOS to avoid the Regions account. (Compl. ¶ 28).

Official Comment No. 2 to UCC § 932 states, "this section does not cover the case in which a debtor withdraws money (currency) from its deposit account or the case in which a bank debits an encumbered account and credits another account it maintains for the debtor."   As alleged in the Complaint and acknowledged in Defendant's Motion, that is exactly what BOS did.  BOS routinely swept the Gateway account to pay its loan account.  The BOS revolving line of credit was just another loan account it maintained for Gateway.

UCC § 932 is designed to allow the free flow of funds and the finality of transactions to parties that have not acted in bad faith.  Thus, BOS cannot avail itself of this protection.  As set forth in the Complaint, BOS is not an innocent third party nor was it someone that acted in good faith.  Instead, BOS was, at all times, working with Gateway to assure continued payment of BOS' revolving line of credit while acknowledging Gateway's end run of NextGear's prior, perfected superior lien.

**III.**    **The UCC does not preempt or bar alternative causes of action.**

NextGear's claims for Conversion, Unjust Enrichment and Tortious Interference are not precluded by the UCC.  A large portion of BOS' Motion is spent arguing that NextGear's common law claims should be dismissed because such claims are pre-empted by the UCC. However, even without addressing the merits of NextGear's Complaint as a whole, BOS' argument nonetheless fails based upon the plain language of Fed. R. Civ. P. 8(d)(2) which provides that "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."   This is true even if the theories or facts are not specifically identified as stated in the alternative. *Mays-Mays-Maune & Assocs., Inc. v. Werner Bros.,* 139 S.W.3d 201, 208 (Mo. Ct. App. 2004) ("[E]ven though the fact ... was not explicitly stated to be an alternative fact allegation, its alternativity can be reasonably inferred from the context of the pleadings in the case.").

To suggest, as BOS has, that a party's remedies are limited by the UCC in the context of a fraudulent transfer would lead to an absurd result.  It would encourage depository banks to engage in collusive transfers to violate a junior creditors rights in collateral for the sole benefit of the depository banks.  This result clearly would be contrary to the meaning and spirit of the law.

*See Thompson v. United States,* 408 F.2d 1075, 1081-85 (8th Cir. 1969) (holding that the lack of good faith on part of secured creditor towards the United States government, a junior creditor, was a proper basis for altering Article 9 priorities); *See also, Platte Valley Bank v. Tetra Fin. Group, LLC*, 682 F.3d 1078, 1087 (8th Cir. 2012) (acknowledging that under Example 2 of the Second Official Comment to U.C.C. § 9–322, "a depository bank that holds a superior interest in a deposit account ... could be liable to a creditor with a junior interest based upon the depository bank's wrongful conduct in colluding with the debtor ...."). Thus, NextGear has adequately pled each count contained in the Complaint.

**IV.      NextGear's claims are not barred by the economic loss doctrine.**

      BOS asserts that Counts II and IV of the Complaint are barred under the economic loss doctrine. This is simply incorrect because NextGear's tort claims are independent and distinct from its breach of contract claim. Stated differently, NextGear's tort claims do not rise and fall based on an interpretation of the Subordination Agreement. *Vogt v. State Farm Life Ins, Co*., No. 2:16-cv-04179-NKL, 2017 WL1498073, at *2 (W.D. Mo. April 26, 2017) ("The Missouri Supreme Court adopted the [economic loss] doctrine to preserve the distinction between tort and contract where a claim is based on the "loss of [the] bargain.). Further, "Missouri law is clear that a single act can constitute both a breach of contract and a tort without the tort being barred by the economic loss doctrine… the mere fact that the complained of act or omission which breaches a contract may also…give rise to liability in tort is no bar to recovery." *Id.* (internal citation omitted).

      Counts II and IV allege independent claims for tort that involve the same set of facts as the breach of contract claim. Contrary to BOS' assertion, neither count relies on the breach of the Subordination Agreement as a predicate for its claim. Rather, because Counts II and IV

stand independently, the economic loss doctrine does not bar NextGear's tort claims.[1] Furthermore, as stated above, NextGear has the right to plead its claims in the alternative.

**V.    Counts II, III and IV each state a valid legal claim.**

  **a.    A claim for conversion is proper in these circumstances.**

  Count II seeks recovery for conversion.  Under Missouri Law, "conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Amond v. Ron York & Sons Towing*, 302 S.W.3d 708, 712 (Mo. App. 2009).  To prevail on a claim for conversion, the plaintiff must show: (1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession.  *Id.* at 712.

  Confusingly, BOS argues that NextGear's conversion claim should be dismissed because NextGear never deposited any money with BOS and never had the right to possession of any funds deposited in the BOS account.  However, BOS again misses the mark.  Under Missouri law, "funds placed in custody of another for a definite application and their misappropriation makes holder liable in conversion."  *Brandhorst v. Carondelet Sav. & Loan Ass'n*, 625 S.W.2d 696 (Mo.App. E.D. 1981) (debtor's proof of creditor's purchase of money orders with money placed in custody of creditor's teller for specified purpose of paying off debt, which purchase was to enable transfer between creditor's offices, satisfied requirement that debtor plead and demonstrate acquisition of money by creditor evidencing claim of right in conflict with that of debtor, for purpose of allegation of conversion); *see also, Asbury Carbons, Inc. v. Southwest*

---

[1] Additionally, the Eastern District of Missouri has observed that resolution of the question of whether claims should be dismissed based on the economic loss doctrine would be premature at the motion to dismiss phase. *See e.g.*, *Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd*., 129 F.Supp.3d 787, 792 (E.D. Mo. 2015); *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc*., No. 4:17-cv-00764 JAR, at *4 (E.D. Mo. Sept. 29, 2017).

*Bank,* No. 4:10-cv-878 (CEJ), 2001 WL 1086067 (E.D. Mo. Mar. 22, 2011) (plaintiff adequately stated a claim for conversion of the specific payments over which plaintiff held a superior security interest and over which defendant wrongfully exercised control by directing borrowers to submit the payments to defendant instead of to plaintiff).

Therefore, NextGear has sufficiently pled a claim for conversion.

### b.  NextGear's Complaint properly alleges sufficient facts to state a claim for unjust enrichment.

Plaintiff has alleged facts to support a viable claim for unjust enrichment. A party claiming unjust enrichment must show the following elements: "(1) that the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit." *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr*., 280 S.W.3d 678, 697 (Mo. App. 2009) (internal citation omitted).

Contrary to Defendant's arguments, this claim is not precluded by the existence of an express contract.[2] *See Fellows v. Am. Campus Communities Servs., Inc.,* No. 4:16-CV-01611 JAR, 2017 WL 2881121, at *3 (E.D. Mo. July 6, 2017) ("[T]he mere existence of a contract does not preclude Plaintiff from claiming in the alternative that Defendant was unjustly enriched."); *Jones v. Carondelet Health*, 12-00213-CV-W-BP, 2012 WL 12898834, at *4 (W.D. Mo. Aug. 17, 2012 (finding that Plaintiff could pled claims for breach of contract and unjust enrichment).

Moreover, BOS is disingenuous and misstates the elements of unjust enrichment in arguing that the benefit must be conferred upon a Defendant by the Plaintiff.  This is simply not true and contrary to Missouri law which only requires that a defendant was enriched by the

---

[2] BOS argument that NextGear's claim for unjust enrichment should be dismissed because it is governed by an express contract is contrary to its assertion that the Subordination Agreement was *not* an express contract governing the entirety of the rights between BOS and NextGear but simply a statement of their relative priority in specific funds. *BOS Memorandum in Support of Motion to Dismiss Second Amended Complaint*, Section D, p. 10

receipt of a benefit.  *Id.*  BOS cites the *Legacy Chapels* case which mentions as a fact that the benefit in that dispute was conferred upon the defendant by the plaintiff, but *Legacy Chapels* does not stand for the proposition that it is required as part of the cause of action.  Moreover, the word "benefit," for purposes of unjust enrichment, denotes "any form of advantage." Restatement (First) of Restitution § 1 (1937).  "A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, *performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage." Id*. (emphasis added). Moreover, the benefit may be conferred either by the plaintiff *or* at the plaintiff's expense. *Petrie v. LeVan*, 799 S.W.2d 632, 634 (Mo. Ct. App. 1990) (emphasis added).

The Complaint adequately alleged that BOS' retention of the benefits conferred by NextGear is unjust.  "In determining whether it would be unjust to permit the enriched party to retain benefits, the court uses equitable principles in considering the various factors surrounding the relationship such as change of position, hardship, unreasonable delay, unclean hands, bad faith and other equitable principles of defense." *Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 78 (Mo. Ct. App. 2013).

Therefore, the Complaint properly alleges that NextGear conferred benefits on BOS (which BOS appreciated) and that the retention of those benefits would be unjust. No more is required to state a claim for unjust enrichment.

c.      **BOS' claim of a right to protect its own economic interest does not support dismissal of NextGear's claim for tortious interference.**

Despite its revisionist history, BOS cannot claim this high ground and NextGear has sufficiently pled its tortious interference claim.  BOS was not just a receptacle of a stream of money from GM as it would like the Court to believe.  BOS received money from Gateway via a

13

variety of sources many of which were designed to avoid NextGear's security interests and deprive NextGear of the proceeds of the sale of its collateral.  Until discovery commences, NextGear will be unable to trace the flow of these funds.  Regardless, a claimed defense of protecting its own economic interests is not sufficient to dismiss NextGear's claim.

Further, BOS goes on to argue that NextGear has not sufficiently alleged BOS' use of improper means to wrongfully take proceeds of NextGear's collateral.  "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law. *W. Blue Print Co., LLC v. Roberts, 367 S.W. 3d 7*, 20 (Mo. banc 2012).  Here, the Complaint thoroughly alleges that Defendants used improper means, including misrepresentation of fact and other wrongful acts recognized by statute or common law, such as breach of contract and conversion.  Specifically, NextGear alleges that BOS worked "in concert" with Gateway to direct NextGear Vehicle Proceeds improperly into the BOS account. (Compl. ¶ 60).  Further, NextGear alleges that BOS "induced" Gateway to take such action which it knew were harmful to NextGear. (Compl. ¶ 62). *See also, Paccar, Inc. v. Elliot Wilson Capitol Trucks, LLC,* 905 F. Supp. 2d 675, 694-95 (D. Md. 2012) (encouraging third party not to exercise diligence required by contract could support plausible tortious interference with prospective relations claim); *Asbury Carbons, Inc.* 4:10-CV-878 CEJ, at *5 (allegations that defendant's right to block a borrower's payments on a note was conditioned upon the terms of an agreement between plaintiff and defendant and that defendant acted outside its rights under the agreement by directing borrowers to withhold payment when no valid payment blockage notice was in effect were sufficient to state a claim for tortious interference).

14

Thus, NextGear's allegations that BOS worked in concert with Gateway and induced its actions, for the benefit of BOS, are sufficient allegations of improper means and its overall claim for tortious interference.[3]

## CONCLUSION

WHEREFORE, Plaintiff NextGear Capital prays this Court make and enter its order denying Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

CARMODY MACDONALD P.C.

By:     */s/ Spencer P. Desai*
Spencer P. Desai, #39877
Patrick G. Carmody, #62784
Lauren G. Gamel, #69085
120 South Central Avenue, Suite 1800
St. Louis, Missouri 63105
314-854-8600 Telephone
314-854-8660 Facsimile
spd@carmodymacdonald.com
pgc@carmodymacdonald.com

*Attorneys for Plaintiff NextGear Capital, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing was served on the 23rd day of January 2018 via the Court's ECF system upon all counsel of record.

*/s/ Spencer P. Desai*

---

[3] At this preliminary stage of the litigation, NextGear does not possess records to specifically point to evidence of threats, misrepresentations or other wrongful acts as BOS demands.  However, for the purposes of a Motion to Dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher*, 699 F.3d 1013.