UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-01086-NCC |
| | ) | |
| BANK OF SPRINGFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

**<u>Introduction</u>**

NextGear's third attempt to plead still alleges no actionable conduct by BOS. NextGear's defense of its Second Amended Complaint relies almost exclusively upon innuendo drawn from facts that, when objectively viewed, demonstrate only that BOS did exactly what NextGear expected and agreed that BOS could and would do when NextGear agreed to subordinate its interest in the GM payments. GM deposited Open Account Payments in Gateway's BOS account and BOS periodically swept that account to repay its Gateway loans.

Despite throwing around words like "collusion" and "misconduct," NextGear seems to concede that it alleges nothing more than BOS's routine practice explicitly contemplated by the Subordination Agreement, and asks the Court to forgive its pleading deficiencies pending "further investigation and discovery," a theme repeated throughout NextGear's response (P. Memo., Doc #25 at 5, 7, 8, 14). NextGear does not offer BOS the same deference, declaring that "BOS instead litters its Motion with unsubstantiated factual statements which conveniently fit into its narrative" (P. Memo., Doc #25 at 1). NextGear never mentions

1

this strident accusation again, and never bothers to identify the "unsubstantiated factual statements."

BOS includes citations for all of the facts referenced in its motion. NextGear, on the other hand, does not, *and* relies on several "facts" that are not included in its pleadings. NextGear refers to sales "out of trust", that BOS continued to make advances to Gateway, NextGear's replevin action, Orders entered in the Gateway bankruptcy and Gateway's post-bankruptcy efforts to sell its business (P. Memo., Doc #25 at 2, 3 and 4). None of these matters are alleged in the Second Amended Complaint. Setting aside NextGear's hyperbole, innuendo and matters outside the pleadings, the Second Amended Complaint fails to state a claim for relief: "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012).

**ARGUMENT**

**I.   THE COURT SHOULD DISMISS COUNT I FOR BREACH OF THE SUBORDINATION AGREEMENT BECAUSE NEITHER THE SUBORDINATION AGREEMENT NOR THE UCC PROHIBITS PAYMENTS TO A JUNIOR CREDITOR ABSENT ACTUAL COLLUSION BETWEEN THE JUNIOR CREDITOR AND THE DEBTOR THAT INCLUDES SEPARATELY WRONGFUL CONDUCT BY THE JUNIOR CREDITOR, WHICH IS NOT ALLEGED HERE**

Notwithstanding NextGear's colorful and unsupported reference to Gateway's "insatiable need for cash," the five bullet points listed by NextGear as evidence of collusion do not even give rise to an inference of misconduct (P. Memo., Doc #25 at 7). In fact, the last bullet point is nothing more than a repeat of the conclusion that NextGear asks the Court to draw from the otherwise innocuous facts alleged: "BOS acted purposefully and in concert with Gateway regarding the deposit of funds into Gateway's BOS account." *Id.* Even under the liberal federal rules, "a successful pleader must do more than merely incant labels, conclusions, and the

2

formulaic elements of a cause of action." Baicker-McKee, Janssen, Corr, *Federal Civil Rules Handbook 2019* at 429 (citations omitted).

NextGear knows that it cannot prove any collusion or wrongdoing based on the mere fact that GM deposited money in the BOS account, because NextGear knew that was happening. Thus, NextGear suggests that GM's deposits were not the routine practice contemplated by the Subordination Agreement. Without pointing to *any* facts, alleged or otherwise, NextGear argues that BOS should have known that Gateway was "diverting" deposits from its Regions account to its BOS account, referring to paragraph 28 of the Complaint (P. Memo., Doc #25 at 8). That is not what paragraph 28 says. Paragraph 28 simply references GM's deposits into the BOS account, which Nextgear knew was happening and which prompted NextGear and BOS's execution of the Subordination Agreement in the first place. It says nothing of "diversion" and neither do any of the prior allegations incorporated into Count I.

BOS submits that NextGear's bare bones allegations do not and cannot override the protection given BOS under Article 9 §400.9-332. Moreover, NextGear does not address the other sections of Article 9 that protect BOS. *See* §400.9-340 (bank's set-off and recoupment rights are not diminished by senior security interests), and §400.9-341 (bank may continue to treat debtor as customer of deposit account unless creditor has taken control of account). *See* BOS Memo in Support, Doc #22 at 6, 8 and 11. Even if Gateway was in breach of its Floorplan Note and the Amended and Restated Forbearance Agreement, and even if BOS knew that, as alleged, nothing in *any* of those documents overrode BOS's right to use funds deposited into Gateway's account under the framework of Article 9.

## II. THE COURT SHOULD DISMISS COUNTS II-IV BECAUSE THEY ARE PRE-EMPTED BY THE MISSOURI UCC, ARE BARRED BY THE ECONOMIC LOSS DOCTRINE AND OTHERWISE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. The UCC Pre-empts Counts II-IV

NextGear offers no substantive response to the cases holding that Article 9 pre-empts common law remedies. Instead, NextGear points out that Rule 8(d)(2) allows a party to allege "alternative statements of a claim" so long as "any of them is sufficient." BOS does not understand the reference in this context. Just because NextGear can *plead* in the alternative does not mean that either or both of the alternatives will survive a dispositive motion. *See Aetna Cas. and Surety Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 585-86 (2d Cir. 2005)(rejecting claim that is "at war with itself"). NextGear cites no authority for the proposition that the privilege to plead in the alternative permits pleading of legally-barred claims—in the alternative or otherwise—whether they are deficient under doctrine of pre-emption, statute of limitations, for failure to state a claim, etc.

Neither does Article 9 pre-emption foster "absurd" or bad behavior (P. Memo., Doc #25 at 9). Rather, Article 9 promotes order and efficiencies by encouraging senior lenders to perfect their security interests by taking control of the collateral or exercising their judicial rights as provided by Sec. 400.9-340 and 9-341. *See, e.g.,* Official Comment 3 to Sec. 9-341 ("The more important function of this section, which is not impaired by Section 9-340, is the bank's right to follow the debtor's (customer's) instructions (e.g., by honoring checks, permitting withdrawals, etc.) until such time as the depository institution is served with judicial process or receives instructions with respect to the funds on deposit from a secured party who has control over the deposit account").

4

### B.      The Economic Loss Doctrine Bars Counts II and IV

NextGear argues that its tort claims are "independent and distinct" from the Subordination Agreement, but the allegations in the Second Amended Complaint do not bear that out.  Count II premises liability for conversion on the fact that BOS took money "due to NextGear pursuant to the terms of the Subordination Agreement (2nd AC, Doc #19, ¶40).  While Count IV (tortious interference) does not mention the Subordination Agreement, it does incorporate by reference the allegations that do.  Moreover, NextGear's tortious interference claim depends on the notion that BOS diverted funds otherwise "due to NextGear pursuant to the terms of the Subordination Agreement" because, without that nexus, BOS could not possibly have done anything wrong.

NextGear's conversion and tortious interference claims are not "outside of or collateral to the contract"—they are inextricably tied to and depend upon the Subordination Agreement.  *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013).

### C.      Plaintiff's Conversion Claim Fails To State A Claim

NextGear acknowledges the general rule that it must allege "a plaintiff placed funds 'in the custody of another for a specific purpose,' and the defendant diverts those funds 'for other than such specified purpose.'"  *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015)(quoting *Dillard v. Payne*, 615 S.W.3d 53, 55 (Mo. 1981)).  NextGear never says how its allegations satisfy this requirement given NextGear never took the necessary steps to acquire control over the GM funds.  Instead, Nextgear cites without discussion several cases upholding conversion claims under different facts.

In *Asbury Carbons, Inc. v. Southwest Bank,* 2011 U.S.Dist. LEXIS 29304 (E.D.Mo. 2011), for example, the agreement between the two banks *expressly prohibited* the

5

defendant from loaning the banks' shared debtor more than $8,000,000. The defendant unrepentantly breached its explicit contractual agreements:

> Plaintiff sent letters to defendant on May 26, 2009 and August 18, 2009, notifying defendant that it was in breach of the Intercreditor Agreement and that any amounts defendant had loaned in excess of $8 million would be subordinate to the Asbury Note. Defendant, however, did not acknowledge the breach. Defendant used the payment blockage period to continue to collect additional payments from borrowers, and instructed borrowers to not pay plaintiff after the six-month payment blockage period had expired, despite the borrowers' willingness and ability to do so.
>
> On February 8, 2010 defendant issued a second payment blockage notice after borrowers defaulted again on the SWB Notes. On that same day, defendant accelerated payment on the approximately $7.5 million outstanding principal owed by borrowers. Plaintiff claims that borrowers made payments in the amount of approximately $1 million after the February 8, 2010 default notice, but that defendant proceeded with foreclosure proceedings on the outstanding balance of its loan.

*Id.,* at *2-3. NextGear alleges nothing of the kind here.

In *Brandhorst v. Carondolet Sav. & Loan Ass'n,* 625 S.W.2d 696 (Mo.App. E.D. 1981), a mortgagor delivered cash to its mortgagee with the specific instructions to apply the money to the outstanding debt. The mortgagee took the money, but did not credit the loan. The case has no factual or legal connection to this litigation.

Count II alleges a generic claim for the conversion of money and fails to state a claim for which relief can be granted.

        **D.**     **Plaintiff's Unjust Enrichment Claim Fails To State A Claim**

In footnote 2, NextGear acknowledges that the Subordination Agreement constitutes "a statement of [the parties'] relative priority in specific funds" (P. Memo., Doc #25 at 12 fn.2). Those "specific funds" are the monies at issue in this case. The Court should

6

dismiss Count III because Missouri law does not allow a claim for unjust enrichment when an express contract governs the subject matter. *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 955-56 (8th Cir. 2016) (citing *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014).

BOS does not doubt that there are instances where a plaintiff might confer a benefit by some means other than transferring money or property to a defendant—i.e., by "adding to the other's security or advantage" (P. Memo., Doc #25 at 13). BOS does not understand, and NextGear does not allege or explain, how it did so here.

### E. **Plaintiff's Tortious Interference Claim Fails To State A Claim**

NextGear takes substantial liberties with its pleading to justify its tortious interference claim. NextGear asserts "BOS received money from Gateway from a variety of sources many of which were designed to avoid NextGear's security interests" (P. Memo., Doc #25 at 13-14). There is no such allegation in the Second Amended Complaint. NextGear alleges that "Defendants used improper means, including misrepresentation of fact" (P. Memo., Doc #25 at 14). There is no such allegation in the Second Amended Complaint.

The Court should disregard this improper argument, as well as NextGear's reference to its allegations that simply parrot the elements of the claim. As stated in BOS's original memorandum, under the well-pleaded facts, BOS both had an unqualified right to use GM funds and did not employ any "improper means" when it did so. BOS had a banking relationship with Gateway and, therefore, had a contractual and a financial interest in the affairs of Gateway, including, obviously, repayment of its loans. Plaintiff's belief, no matter how deeply held, that BOS's draws were "without justification" is not enough to state a claim for relief. Plaintiff's attempt to characterize or infer that otherwise legal, proper and properly motivated actions were somehow wrongful also fails settled pleading principles.

7

The Court should dismiss Count IV.

## CONCLUSION

BOS respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint with prejudice.

By:  /s/Paul J. Puricelli
Paul J. Puricelli   32801MO
7733 Forsyth Boulevard, Suite 500
St. Louis, Missouri  63105
(314) 721-7011 (telephone)
(314) 721-8660 (telecopy)
pjp@stoneleyton.com

## PROOF OF SERVICE

I hereby certify that on January 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Spencer P. Desai
Kyle P. Lane
CARMODY MACDONALD P.C.
120 South Central Avenue, Suite 1800
St. Louis, MO  63105
spd@carmodymacdonald.com
kpl@carmodymacdonald.com

 /s/Paul J. Puricelli

8