# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-CV-01086-NCC |
| | ) | |
| BANK OF SPRINGFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Bank of Springfield's Motion to Dismiss Second Amended Complaint (Doc. 21). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9). For the following reasons, Defendant's Motion will be **GRANTED**.

## I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*,

550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. (citation omitted). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable references from the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

## II. Background

Gateway Buick GMC, Inc. d/b/a Gateway Buick GMC ("Gateway") operated an automotive dealership in Hazelwood, Missouri ("Dealership") engaged in the business of selling new Buick and GMC vehicles until May 2018 (Doc. 19 at ¶¶5, 6). Defendant Bank of Springfield ("BOS") provided financing to Gateway pursuant to the following promissory notes (collectively "BOS Notes"):

> 1) Promissory note dated August 11, 2015 in the original principal amount of $10,000,000.00 (Doc. 19-1);
>
> 2) Promissory note dated September 29, 2015 evidencing a revolving line of credit with a credit limit of $3,125,000.00 (Doc. 19-2); and
>
> 3) Promissory note dated January 12, 2016 evidencing a revolving line of credit with a credit limit of $500,000.00 (Doc. 19-3).

(Doc. 19 at ¶7). The BOS Notes are secured by a deed of trust on the Dealership and a Commercial Security Agreement and UCC filing (Doc. 19 at ¶8).

Plaintiff NextGear Capital, Inc. ("NextGear") provided floor plan financing to Gateway pursuant to a Demand Promissory Note and Loan and Security Agreement dated October 27,

2014 (the "Floorplan Note") (Doc. 19-7 ("Demand Promissory Note and Loan Security Agreement"); Doc. 19 at ¶9). In the Floorplan Note, Gateway granted NextGear a security interest in all of its assets and properties wherever located, including, without limitation, all equipment of any kind; all vehicles, vehicle parts and inventory then owned or thereafter acquired; purchase money inventory, the purchase of which was financed or floor planned by NextGear for Gateway, of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts receivable, chattel paper, and general intangibles then owned or thereafter acquired by Gateway, together with the proceeds thereof; and all of Gateway's documents, books and records relating to the foregoing (the "Collateral") (Doc. 19 at ¶9; Doc. 19-7). NextGear held a senior lien position in the accounts receivable of Gateway including all funds Gateway received from General Motors (Doc. 19 at ¶10).

On October 1, 2015, Gateway, NextGear and BOS entered into a Subordination Agreement (Doc. 19-8 ("Security Interest Subordination Agreement");Doc. 19 at ¶11). Pursuant to the terms of the Subordination Agreement NextGear agreed to subordinate "all of [Gateway's] open accounts with General Motors that are now or may in the future be owed to [Gateway] to General Motors ("GM Open Accounts Receivable"), except to the extent, if any, that such GM Open Accounts Receivable constitute proceeds of specific vehicles floor planned for [Gateway] by [NextGear] and for which [NextGear] remains unpaid in whole or in part" (Doc. 19-8; Doc. 19 at ¶¶12, 13). Pursuant to the Subordination Agreement, NextGear subordinated its senior lien position in payments from General Motors that were not proceeds from vehicles specifically floor planned by NextGear (Doc. 19 at ¶14). Gateway received at least two types of payments from General Motors: (a) vehicle rebates and holdbacks that constituted proceeds from vehicles

directly floorplanned by NextGear ("NextGear Vehicle Funds"); and (b) various dealer incentive payments in which NextGear agreed to subordinate its lien priority pursuant to the Subordination Agreement (Doc. 19 at ¶15).

On May 27, 2016, NextGear and Gateway entered into a Forbearance Agreement (Doc. 19 at ¶16). The Forbearance Agreement was necessitated by Gateway's failure to remit payment for vehicles Gateway sold subject to the Floorplan Note (Doc. 19 at ¶16). On July 10, 2017, NextGear and Gateway entered into an Amended and Restated Forbearance Agreement which acknowledged further defaults by Gateway under the Floorplan Note (Doc. 19-9 ("Amended and Restated Forbearance Agreement"); Doc. 19 at ¶17). Section 3C of the Amended and Restated Forbearance Agreement prohibits Gateway from obtaining any additional loan advances from BOS (Doc. 19-9; Doc. 19 at ¶19). BOS had knowledge of the Forbearance Agreement and the Amended and Restated Forbearance Agreement (Doc. 19 at ¶18).

Beginning in May 2016, by virtue of its continuing and ongoing action selling vehicles out of trust under the Floorplan Note, Gateway was in default under the Floorplan Note and the BOS Notes (Doc. 19 at ¶21). Plaintiff had risk managers on site at Gateway, on a weekly basis, since early 2017 to prevent further out of trust sales and proper application of automobile sales proceeds (Doc. 19 at ¶23). BOS was aware of Plaintiff's efforts (Doc. 19 at ¶23).

On June 30, 2017 Gateway and the Missouri Department of Revenue entered into a Final Settlement and Stipulation Agreement regarding Gateway's failure to pay sales tax (Doc. 19 at ¶24). BOS was aware of the Final Settlement and Stipulation Agreement (Doc. 19 at ¶24).

Gateway maintained bank accounts at several banks including Regions Bank and BOS (Doc. 19 at ¶25). Pursuant to the various loan agreements with NextGear, General Motors

payments consisting of NextGear Vehicle Funds were to be deposited into the Regions Bank account which was subject to a control agreement with NextGear (Doc. 19 at ¶25).

As part of the pay down of the BOS Notes, BOS would utilize funds from Gateway's deposit account at BOS (Doc. 19 at ¶27). At the direction of Gateway and with the knowledge of BOS, General Motors would deposit rebate, holdback and incentive payments into the BOS account (Doc. 19 at ¶28). BOS was aware that rebate and holdback payments, constituting NextGear Vehicle Funds, were being deposited into the Gateway's account at BOS (Doc. 19 at ¶28). The receipt of NextGear Vehicle Funds by BOS constituted a breach of the Subordination Agreement (Doc. 19 at ¶30). BOS also breached the terms of the Subordination Agreement by routinely sweeping money in Gateway's accounts that included NextGear Vehicle Funds (Doc. 19 at ¶29). The payment of NextGear Vehicle Funds to BOS by Gateway was done in violation of the Amended and Restated Forbearance Agreement and the Subordination Agreement (Doc. 19 at ¶32). BOS and Gateway acted purposefully and in concert in directing NextGear Vehicle Funds to be deposited at BOS for payment of the BOS Notes in violation of the Subordination Agreement, Floorplan Note and the Amended and Restated Forbearance Agreement (Doc. 19 at ¶¶34, 38, 50, 60). BOS induced Gateway to deposit funds, regardless of the source, into BOS for the purpose of repayment of the BOS Notes (Doc. 19 at ¶62). By taking possession of and applying the NextGear Vehicle Funds to the BOS Notes, BOS prevented NextGear from collecting proceeds from sale of vehicles due to NextGear under the Floorplan Note (Doc. 19 at ¶39). NextGear has advised BOS that it is improperly retaining and possessing the NextGear Vehicle Funds in violation of the Floorplan Note and Subordination Agreement and has demanded BOS turnover the NextGear Vehicle Funds (Doc. 19 at ¶52). Despite NextGear's

demand, BOS has failed and refused to turnover or return the NextGear Vehicle Funds (Doc. 19 at ¶53).

On July 3, 2018, NextGear filed this action against BOS for breach of contract (Doc. 1). On September 10, 2018, prior to BOS answering or otherwise responding to its Complaint, NextGear filed an Amended Complaint adding claims for conversion, unjust enrichment, fraudulent inducement, negligent misrepresentation, equitable claim for recession, constructive trust, and money had and received (Doc. 5). On November 6, 2018, BOS filed its first Motion to Dismiss (Doc. 7). On December 11, 2018, NextGear filed its Second Amended Complaint adding a claim and removing several others such that the following claims are before the Court: breach of contract (Count I); conversion (Count II); unjust enrichment (Count III); and tortious interference (Count IV) (Doc. 19).

On January 9, 2019, Defendant BOS filed its Motion to Dismiss Second Amended Complaint (Doc. 21). BOS asserts that NextGear's breach of contract claim (Count I) should be dismissed as NextGear has failed to properly allege facts that would remove BOS's actions from the protections of the Uniform Commercial Code ("UCC") 9-332, codified at Missouri Revised Statute § 400.9-332 (*Id.* at 2). BOS next asserts that Counts II through IV allege common law claims or requests for remedies that are inconsistent with the provisions of Article 9 and are, therefore, preempted by the UCC (*Id.* at 3). Alternatively, BOS argues that Counts II through IV each fail to state a claim for which relief can be granted (*Id.* at 4).

### III. Analysis

Under UCC 9-332, "a transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." Mo. Rev. Stat. § 400.9-332. The purpose underlying

section 9-332 is to ensure that security interests in cash proceeds and deposit accounts do not impede the flow of funds in the banking system.  Mo. Rev. Stat. § 400.9-332, cmt. 3.  To determine whether a transferee is a "bad actor" under Article 9, the Court is to look at Article 8 of the UCC for guidance as to what constitutes collusion.  Mo. Rev. Stat. § 400.9-322, cmt. 4.  The collusion standard in section 9-332 is the most protective found in the UCC.  *Id.*

Article 8 recites that the principles contained in Restatement (Second) of Torts § 876 (1979) govern the collusion standard under the UCC.  Mo. Rev. Stat. § 400.8-115, cmt 5.  A person may only be liable for the action of another under the collusion standard for Section 876 of the Restatement if there is evidence that the two parties acted pursuant to an agreement or otherwise in concert with each other and the purpose of the concerted action is illegal, fraudulent or otherwise wrongful towards the injured third party.  *In re Mach., Inc.*, 342 B.R. 790, 799 (Bankr. E.D. Mo. 2006).  Missouri law also "requires that the defendant's action itself, separately considered, be wrongful with respect to the injured third-party."  *Id.*  Therefore, to avoid application of Article 9's protections, NextGear must sufficiently allege that BOS colluded with Gateway, that the concerted action was illegal, fraudulent or otherwise wrongful towards NextGear, and that BOS's actions, when separately considered, were wrongful with respect to NextGear.

The Court finds that NextGear has failed to sufficiently allege that BOS and Gateway colluded in violating the rights of NextGear in order to avoid the protections of Article 9.  NextGear alleges that BOS and Gateway acted purposefully and in concert in directing NextGear Vehicle Funds to be deposited at BOS for payment of the BOS Notes in violation of the Subordination Agreement, Floorplan Note and the Amended and Restated Forbearance Agreement.  In support of this sweeping assertion, NextGear alleges that BOS was aware that

Gateway was in default with NextGear and was selling vehicles out of trust. NextGear further alleges that BOS was aware of NextGear's efforts to prevent further out of trust sales and proper application of automobile sales. NextGear also argues that BOS should have know that the NextGear Vehicle Funds were being deposited in the BOS account. Indeed, BOS concedes that it knew that these funds were being deposited into Gateway's BOS account (Doc. 26 at 3). However, "a junior secured creditor is under no obligation to identify and segregate cash proceeds for the benefit of the senior secured creditor." *Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1057 (8th Cir. 2005). This is the case even if the junior secured creditor knew of the senior secured party's interest. *Id.* The collusion standard in Article 9 does not impose a duty on a transferee of funds to identify and segregate the funds absent a contractual obligation to do so. *In re Mach., Inc.*, 342 B.R. 790, 799–800 (Bankr. E.D. Mo. 2006). Here, BOS was not under a contractional obligation to identify and segregate the NextGear Vehicle Funds from the other GM Accounts Receivable (*See* Doc. 19-8 at 1). *Second Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.,* 409 F.3d 1049, 1057 (8th Cir. 2005) ("[W]e will not imply a duty to segregate a debtor's deposits" absent an express contractual obligation). In fact, NextGear appears to have expressly contracted with Gateway to ensure that the NextGear Vehicle Funds were deposited into Gateway's bank account at Regions Bank (Doc. 19 at ¶25). As long as BOS acts rightfully, it cannot be responsible for Gateway's potentially wrongful actions. *See Restatement (Second) of Torts* § 876, cmt. c. (noting that a person does not collude with another when that person rightfully acts, even if that action has the effect of furthering the tortious conduct of the other). NextGear argues that BOS's motion is premature as NextGear is not yet privy to the banking and loan records of Gateway's BOS accounts nor has it seen the revolving loan transaction (Doc. 25 at 5). However, NextGear has failed to include any

other allegations of BOS's potential wrongdoing and, therefore, the Court cannot reasonably infer collusion between BOS and Gateway. *See, e.g., Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1058 (8th Cir. 2005) (finding the question of collusion to be a closer call when the debtor was in default to the bank, the third party contacted the bank and demanded it turn over all of the applicable proceeds, and the bank had taken a much more active role in the debtor's operations). Accordingly, the Court will dismiss Count I.

Similarly, NextGear's common law claims in its remaining counts fail as a matter of law as they are displaced by the provisions of the UCC. The UCC preempts common law claims to the extent those claims create rights or liabilities inconsistent with the UCC. *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, No. 10-03531-CV-S-JTM, 2011 WL 2601209, at *3 (W.D. Mo. June 30, 2011) (collecting cases). Here, NextGear's common law causes of action are based solely on the analysis prescribed by the UCC and are inconsistent with the protections afforded BOS in Article 9. The gravamen of each remaining claim is the same — NextGear alleges that BOS and Gateway worked in concert to place NextGear Vehicle Funds in the possession of BOS for payment of BOS Notes, that the application of the funds to the BOS Notes was unauthorized, and that BOS continues to enjoy the benefit of the NextGear Vehicle Funds. As suggested by NextGear, if the Court were to determine that the actions of BOS fell outside the protections of the UCC, then NextGear could properly plead alternative common law claims. However, as detailed above, NextGear has failed to sufficiently allege that BOS and Gateway colluded in violating the rights of NextGear in order to avoid the protections of Article 9. Therefore, any common law claims purporting to remove the protections of Article 9 are properly displaced. Furthermore, without properly alleging that NextGear and BOS colluded, the remaining claims also fail to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  Accordingly, the Court will dismiss NextGear's remaining common law claims—Count I (Conversion), Count II (Unjust Enrichment), and Count III (Tortious Interference).  In the interests of justice, the Court will afford NextGear another opportunity to amend its complaint.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bank of Springfield's Motion to Dismiss Second Amended Complaint (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff NextGear shall file a Third Amended Complaint in accordance with this Order within fourteen (14) days of the date of this Order.

Dated this 19th day of June, 2019.

        /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE